Rec 067607

ORIGINAL

FILED
JAN 24 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GULF GROUP, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | 08-51 C |

**COMPLAINT**

Plaintiff, Gulf Group, Inc. ("Gulf Group") respectfully presents this Complaint against the United States of America as follows:

**PARTIES AND JURISDICTION**

1. On March 8, 2005, Gulf Group contracted with the United States of America, through the U. S. Department of the Army, Corps of Engineers (the "Army"), to perform work on the Kissimmee River Environmental Restoration project in Highlands County, Florida (the "Project") under Contract DAC17-02-C-0015 (the "Contract"). The Contract was awarded on July 29, 2002.

2. The Project consisted of the construction of two new gated single ogee weir spillways for Structure 84A (S-84A) and Structure 83A (S-83A) as well as ancillary work such as the construction of steel sheet pile walls and the excavation of new canals running to the new structures. The Contract described the work as follows:

> Construction of two new gated single ogee weir spillways for Structure 84A (S-84A) and Structure 83A (S-83A). The main structures will be composed of the base slab, walls and ogee weir, all of which will be constructed of reinforced cast-in-place concrete. Sheet pile wing walls will be used to transition the compacted backfill along the sides of the structures to the typical canal and

levee sections upstream and downstream of the structures. All spillway structures will have concrete service bridges to allow traffic to cross the canals. Elevated operating platforms, to support the gate hoist mechanisms, will be constructed on reinforced concrete columns.

3. The Project was designed by Stanley Consulting, which had a contract directly with the Army.

4. Work on S-83A was solicited as an option under the Contract pending the Army's acquisition of the real property, upon which the new structure was built.

5. The base Contract price was $4,577,538.05. S-83A was added by modification on December 24, 2003, which increased the Contract price to $7,792,590.83.

6. Gulf Group files this Complaint to appeal the denial of its claims within time period provided under the Contract Disputes Act.

7. This Court has jurisdiction over this dispute in accordance with the Tucker Act (28 U.S.C. § 1491) and the Contract Disputes Act (41 U.S.C. § 601, *et seq.*).

## THE NORTHWEST WING WALL TIE-BACK CLAIM

8. Gulf Group realleges and incorporates as if fully set forth herein the averments set forth above in paragraphs 1 through 7.

9. In accordance with the Contract, Gulf Group constructed four sheet pile wing walls, two on the upstream side of S-83A and two on the downstream side of the new spillway.

10. While working on S-83A, there were failures on the upstream northwest wing wall and the southeast downstream wing wall.

11. The Army verbally suspended the work and confirmed the suspension in writing on August 15, 2005.

12. The failures were caused by design errors including a lack of tie-backs to the structure that caused the sheet piling to lean out into the spillway.

13. On September 22, 2005, the Army notified Gulf Group that the Army and its designer, Stanley Consulting, had completed an investigation and determined that additional anchor walls were required on the downstream wing walls (northeast and southeast). The letter attached drawings with the additional anchor walls and asked Gulf Group to price the changes. The letter also expressly stated that it did not constitute a notice to proceed.

14. On October 17, 2005, Gulf Group submitted a proposal to repair and reinforce all of the wing wall failures for $320,566.70. This proposal did not include extended field office overhead.

15. The portion of Gulf Group's proposal for the downstream wing wall failures amounted to $190,591.59.

16. The Army acknowledged that the downstream wing walls failed because of Stanley Consulting's design error.

17. But the Army refused to pay for the upstream northwest wing wall failure because the Army alleged that the failures resulted from "Gulf Group's lack of proper layout and control, excess riprap, and the over-excavation on the passive (water) side placed undue stress on the northwest upstream wing wall ...."

18. On November 7, 2005, Gulf Group notified the Army that it could repair the upstream wing walls "by removing the pressure from the back of the

upstream sheets, dewatering and placing fill in front of the sheets, then re-driving" and that the Army's complete failure to respond to Gulf Group's entire proposal was "delaying the progress of the project ...."

19. Once again, on December 9, 2005, Gulf Group wrote to the Army requesting that the Army address Gulf Group's October 2005 proposal and that the "lack of effort to resolve the tie-back issue is delaying the project."

20. Having received no response from the Army, Gulf Group provided written notice again on January 12, 2006 that the Project would "continue to incur substantial delays due to the lack of government communication."

21. On March 24, 2006, April 11, 2006 and May 2, 2006, Gulf Group sent additional letters asking the Army to resolve the open modification.

22. Eight months after Gulf Group submitted its proposal, the Army agreed to Modification 20, which increased the Contract price by $156,158.03 and granted a 239 calendar day time extension for the repair and reinforcement of the downstream southeast wing wall failures.

23. According to Modification 20, the "contractor constructed steel sheet pile walls as shown in the plans and specifications. The constructed walls on the downstream side of the structure failed, and the Government directed additional anchor walls, walers, and tie rods on the downstream side of the new structure of S83 due to design error."

24. Gulf Group ultimately made the repairs to the upstream northwest wing wall under protest.

25. On November 27, 2006, Gulf Group submitted a certified claim for the additional $82,819.59 for labor, equipment, and materials to repair the upstream northwest wing wall and an eighteen (18) day time extension.

26. Over one year later, on January 26, 2007, the Contracting Officer issued a final decision denying Gulf Group's claim.

27. Gulf Group is entitled to a judgment extending the contract performance period by eighteen (18) days and increasing the Contract price $82,819.59 for the work performed by Gulf Group on the northwest wing wall.

**WEATHER CLAIM**

28. Gulf Group realleges and incorporates as if fully set forth herein the averments set forth above in paragraphs 1 through 7.

29. On August 16, 2004, Gulf Group notified the Army that the Project had been adversely impacted by Hurricane Charlie—an effect that extended to Gulf Group's suppliers. No response was forthcoming from the Army.

30. On September 29, 2004, Gulf Group notified the Army that four hurricanes impacted the progress of the Project and that Gulf Group planned to submit a request for equitable adjustment. No response was forthcoming from the Army.

31. On May 7, 2005, Gulf Group wrote that it "was impacted by three hurricanes last year that caused twelve weeks of delay to the S-83 project."

32. On September 13, 2005, Gulf Group provided the Army with its equipment and direct labor costs for the weather impacts and wrote: "three of the four substantial hurricanes passed within 40 to 50 miles from the S-83 jobsite. We received significant damages to our facilities, our office trailer was a

total loss due to a tornado, and the overwhelming rain caused continuous rework of our jobsite."

33. Nine months later, on July 24, 2006, the Army denied Gulf Group's claim for damages and granted an additional eight (8) calendar day time extension.

34. On February 5, 2007, Gulf Group submitted a certified claim requesting an eighty-six (86) calendar day time extension for adverse weather.

35. On May 3, 2007, the Contracting Officer granted Gulf Group an additional eleven (11) calendar days, but otherwise denied Gulf Group's claim for additional time.

36. Gulf Group is entitled to a judgment extending the contract performance period by an additional eighty-six (86) calendar days and remitting any liquidated damages for this time period.

**PRAYER FOR RELIEF**

WHEREFORE, Gulf Group respectfully requests the following relief:

a) That this Honorable Court render judgment extending the contract performance period by eighteen (18) days and increasing the Contract price by $82,819.59 for the work performed by Gulf Group on the northwest wing wall.;

b) that the Court render a judgment extending the contract performance period by eighty-six (86) calendar days for unusually severe weather and awarding to Gulf Group any funds being withheld as liquidated damages on account of the Army's failure to modify the Contract;

c) that the Court render in its judgment an award of interest, pursuant to the Contract Dispute Act, on the amounts sought in the two claims and the money improperly withheld as liquidated damages.

Respectfully submitted this 22nd day of January, 2008.

Kent P. Smith
Ga. Bar No. 661300
Admitted to the U.S. Court of Federal Claims

Reginald M. Jones
Ga. Bar No. 403047
Admitted to the U.S. Court of Federal Claims

**SMITH, CURRIE & HANCOCK LLP**
2700 Marquis One Tower
245 Peachtree Center Ave., NE
Atlanta, Georgia 30303-1227
Phone: 404-521-3800
Fax: 404-688-0671

**ATTORNEYS FOR GULF GROUP, INC.**

299350_1.doc